## METROPOLITAN NATIONAL BANK OF NEW YORK CITY VS. GORDON.

STATUTE OF LIMITATIONS:    *Suspended between belligerents.*

Upon the breaking out of a war, all contracts and rights between belligerents are suspended, and upon the restoration of peace the parties are restored to their rights and remedies as they existed at the commencement of hostilities.

APPEAL from *Conway* Circuit Court.
Hon. W. N. MAY, Circuit Judge.
*Wassell & Moore,* for appellant.

GREGG, J.    The appellant sued the appellee in the Conway circuit court on a writing obligatory, dated New York city, April 16, 1860, payable in the city of New Orleans, ten months after date.

Suit was brought March 6, 1872.    On the 16th of April following, the appellee appeared in court and filed his plea of limitation; the appellant replied that she and the assignors of the writing sued on, before and since the making of the obligation, were and are citizens of the state of New York, and that since then a civil war broke out between the United States and certain states in rebellion, one of which was the state of Arkansas in which the appellee resided, and that such war existed from the year 1861 to 1865, during which time all the courts in Arkansas were closed, etc.

The appellee demurred to the replication; the court sustained the demurrer; the appellant refused to respond further and judgment was rendered against her for costs, from which this appeal is prosecuted.

The only question involved is whether or not the statute of limitations run during the late war between residents of belligerent states, when their rights are attempted to be enforced in the state courts.

In the case of *Bennett v. Worthington*, 24 Ark., 487, by our predecessors, a lengthy and considerate opinion was delivered, reviewing many of the older decisions, in which it was distinctly held that when a statute of limitation once begins to run, no subsequent disability will stop it; that the court could make no exception not provided for in the statute, and the closing of the courts, in time of civil war, was not an exception in the statute, and, of itself, could not be made one in the courts; hence the statute continued to run during the late war.    But in the case of *Hanger v. Abbott*, 6 Wal., 542, Mr. Justice Clifford, in speaking for the court, as to the suspen-

sion of the running of the statute of limitations during the late rebellion, said, "unless the rule be so, then the citizens of a state may pay their debts by entering into an insurrection or rebellion against the government of the Union if they are able to close the courts, and successfully resist the laws until the bar of the statute becomes complete, which cannot, for a moment, be admitted. Peace restores the right and the remedy, and, as that cannot be, if the limitation continues to run during the period the creditor is rendered incapable to sue, it necessarily follows that the operation of the statute is also suspended during the same period."

In the case of the *Protector*, 9 Wal., 687, the supreme court approved of the *Hanger* and *Abbott* case, and said the time allowed by statute for taking an appeal should not be considered as running during the existence of war, and Judge Bradley expressly refused to place this upon the act of congress of 1867, in reference to appeals, but, as in the other case, rested it upon general principles.

In the case of *Levy v. Stewart*, 11 Wal., 244, a citizen of New York sued a citizen of Louisiana. Under the Louisiana Code, the prescription act of that state run against minors, interdicted persons and persons residing out of the state, and, in this, it was stronger and unlike the limitation statutes of most, if not all, the other states, and the state supreme court had decided that this statute continued to run during the late war. Yet, without dissent, the supreme court of the United States held that the full period of the war should be deducted upon an issue of limitation in such action.

In the case of *Stewart v. Kahn*, id., 493, and *United States v. Wiley*, id., 508, the cases referred to are affirmed, and the court seem, with entire unanimity, to have fully settled the law that, under modern international law and commercial custom, upon the breaking out of a war, all contracts and

rights between belligerents are suspended, and upon the restoration of peace the parties are restored to their rights and remedies as they existed at the commencement of hostilities.

We are not unconscious of the high respect due these gentlemen who so fully considered this question in our court, and also of the evil tendencies of disturbing a settled doctrine of our own bench. Yet it is very important to the interests of the whole country that there should be uniformity in the decisions of all the courts. And when the highest court of the nation has repeatedly considered and fully settled the law upon questions alike cognizable before them and us, we are disposed to conform to their ruling, even to the overruling of the decisions of our own court.

The judgment is reversed, and the cause remanded for further proceedings.